R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAY 0 9 2024

FILED_____
No.: DOCKETED_____
          DATE          INITIAL

| | |
|---|---|
| **Daniel MARTINEZ-HERNANDEZ** ) | |
| ) | Lower Agency Case No. 216 – 644 – 998 |
| -PETITIONER, *PRO SE,* ) | |
| ) | *Motion for Emergency Stay* |
| **ALIEN No. 216 – 644 – 998** ) | *Pursuant to § 6.4(c)* |
| ) | |

## MOTION FOR EMERGENCY STAY PURSUANT TO § 6.4(c)

Petitioner, Mr. Daniel Martinez-Hernandez is without the benefit of the assistance of counsel and is compelled to appear *Pro Se*, and hereby submits this instant Motion for Emergency Stay of Removal pursuant to the General Order of the Ninth Circuit § 6.4(c).

Here, the Department of Homeland Security, Immigration and Customs Enforcement, ("DHS/ICE") threatens to remove Petitioner to the country of Guatemala, where he has already suffered past persecution and torture. Thus, the record clearly establishes that Petitioner would certainly suffer from future persecution, torture and even death if forced to return to Guatemala where the political conditions and country conditions have worsened, and human rights violations have amplified.

In general, adjudication of a motion for stay of removal requires the Court to consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other

parties interested in the proceedings; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Petitioner satisfies this legal framework because he has suffered past persecution and acts that rise to the level of torture.

Neither statutes nor regulations have defined with any precision the showing necessary to establish past persecution. *See* INA § 101(a)(42), 8 U.S.C. 1101(a)(42); INA § 208, 8 U.S.C. § 1158 (1988); 8 C.F.R. Part 208.

Case law, however, has clearly established that prolonged physical abuse by governmental authorities based upon an applicants political opinion qualifies the individual for refugee status. *See, e.g., Platero-Cortez v. INS*, 804 F.2d 1127 (9th Cir. 1986) (detention and torture of Central American union member); *Matter of Fedorenko*, 19 I. & N. Dec. 57, 69 (BIA 1984) (The term persecution contemplates the infliction of suffering or harm, under government sanction, upon persons who differ from others in the ways specified in the Act. The harm or suffering inflicted may take various forms but it most certainly includes physical confinement, torture, and death.); *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985) (discussing evolution of persecution definition and noting that confinement or torture are sufficient grounds); *Matter of Pula*, I. & N. Dec. 3033 (BIA 1987) (repeated detention, interrogation, and abuse); *Beltran-Zavala v. INS*, 912 F.2d 1027 (9th Cir. 1990) (target of death squad activities);. *Matter of Chen,* Int. Dec. 3104 (BIA 1989) (past persecution alone sufficient).

Petitioner's past persecution, serious harm, assault, direct threats, and acts clearly

rise to the level of persecution and torture under any arguable definition of that term.

Indeed, these events qualify Petitioner for withholding of deportation under INA § 243(h), 8 U.S.C. § 1253(h) (1988), which requires a much higher standard of proof than asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) (comparing reasonable possibility standard of asylum with clear probability standard of withholding).

Under 8 § C.F.R. 208.16(b)(2), an applicant can qualify for withholding if he or she is determined to have suffered persecution in the past such that his life or freedom was threatened. Substantial evidence on the record demonstrates that Petitioner's life and freedom was threatened. Under this standard, Petitioner statutorily qualifies for asylum, withholding of removal, deferral of removal and CAT protection.

Once an applicant has established past persecution, the burden of proof shifts to the Department ("DHS/ICE") to demonstrate by a preponderance of evidence that the individual no longer possesses a well-founded fear of persecution. *See Matter of Chen, supra;* 8 C.F.R. § 208.13(b)(1) (standard for asylum), *see also*, 8 C.F.R. § 208.16(b)(2) (standard for withholding). Here, the agencies erroneously placed the burden of proof on the Petitioner instead of the Department. This calls into question the fundamental fairness of the removal proceedings.

Despite the passage of many years, evidence on the record is insufficient to establish by a preponderance that conditions in Guatemala have changed sufficiently to ensure that Petitioner would not be persecuted upon return. The hostilities in Guatemala

have not ended and, actually has led to an increase in extrajudicial killings, but members of the military, police, and government official have allegedly committed murders or have been involved in acts against those who are perceived as an opposition. Given these underlying facts coupled with the circumstances that Petitioner has suffered past persecution and torture, this Court should grant this motion for stay of removal.

While "not a matter of right", Courts may grant stays in the "exercise of judicial discretion" based on "the circumstances of the particular case." *Nken*, 566 U.S. at 433 (internal quotations and citations omitted). Petitioner satisfies these requirements because Petitioner has received serious death threats, experienced several violent assaults, suffered irreparable harm, serious injury, persecution, and violent acts that rise to the level of torture and fears for his life.

In defining the appropriate standard for review for final administrative orders and decisions, courts have distinguished between conclusions of law and findings of fact. Conclusions of law are generally reviewed *de novo. Nguyen v. INS*, 991 F.2d 621, 623 (10th Cir. 1993); *see also Kapcia v. INS*, 944 F.2d 702, 705 (10th Cir. 1991). However, the interpretation of a statute by an agency charged with its enforcement is entitled to deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Here, Petitioner respectfully points out that whenever such interpretations are inconsistent with the statutory language or legislative intent, they should be rejected. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987).

In *Woodby v. INS*, 385 U.S. 276 (1966), the Supreme Court explicitly acknowledged the tremendous hardship that removal visits upon alien residents. "This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification." 385 U.S. at 285. As a consequence, the Court held that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Id.* at 286. This same reasoning holds true here in this present case. Thus, this Court should grant a stay pursuant to section 6.4(c)(1) of this Court's General Order pending resolution of his petition for review.

Moreover, as a further amelioration of the hardship imposed by removal, the Supreme Court has held that aliens, such as Petitioner, should be accorded the benefit of the doubt whenever issues of statutory interpretation arise. *See Barber v. Gonzales*, 347 U.S. 637, 642 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948) ("any doubt in the interpretation of the statute must be resolved in favor of the alien because of the drastic consequences of deportation."). Applications for asylum merit even closer scrutiny due to the comparative levels of danger and hardship faced by the applicants. Findings of fact are reviewed for substantial evidence on the record. *See, e.g., Melendez v. United States Dep't of Justice*, 926 F.2d 211, 216-219 (2d Cir. 1991).

Where evidence of record is either absent or inadequate to support particular

findings of fact, the findings should be rejected and the matter remanded for development of the record. *See, e.g., Shahandeh-Pey v. INS*, 831 F.2d 1384 (7th Cir. 1987). Here, the evidence of the record does not unequivocally demonstrate that Petitioner would be safe in Guatemala when taken into consideration past-persecution and past torture. As such, this Court should grant a stay of removal pursuant to § 6.4(c).

In addition, Petitioner has a "substantial case on the merits," and a "strong likelihood of success." *See Leiva-Perez v. Holder*, 640 F.3d 970 (9th Cir. 2011) (per curiam). Petitioner has a high likelihood of success because of the persecution occurring in the past is enough to qualify him as a refugee under section 208(a) of the Refugee Act, making him statutorily eligible for asylum. Thus, in *Desir v. Ilchert*, 840 F.2d 723 (9th Cir. 1988), a native of Haiti, *Fritz Desir*, was arrested, assaulted, and threatened on a number of occasions by the Ton Macoutes on several occasions as a result of his failure to pay bribes and his competition with Macoutes-approved merchants and fishermen. In addition to finding that there were realistic threats on *Desirs* life, the court held that:

"[P]ast persecution, without more, satisfies the requirement of section 101(a)(42), even independent of establishing a well-found fear of future persecution. If an alien establishes eligibility for relief under section 208(a) [n]o further showing that he or she would be persecuted is required". *Id.* at 729 (citing *INS v.Cardoza-Fonseca*, 480 U.S. 421, 441 (1987). The regulations pertaining to establishing refugee status are in accord

with *Desir*. Under this legal framework, Petitioner categorically matches that of a "refugee" status. As such, this Court should grant this instant motion for stay of removal, until further order of the Court.

Interestingly, the regulations in *Desir* provide: Past persecution. An applicant shall be found to be a refugee on the basis of past persecution if he can establish that he has suffered persecution in the past in his country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion, and that he is unable or unwilling to return to or avail himself of the protection of that country owing to such persecution. 8 C.F.R. § 208.13(b)(1).

It is well established that imposition of substantial economic disadvantage on a person on account of race, political opinion or other enumerated grounds amounts to persecution. In *Kovac v. I.N.S.*, 407 F.2d 102 (1969), the Court considered the case of a Yugoslav discriminated against because of his Hungarian extraction. As a result of his refusal to act as an informant for the government on other Hungarians, the petitioner was blackballed and it became impossible for him to find employment in the occupation in which he had been trained. *Id.* at 104. The Court held that he was eligible for asylum: [A] probability of deliberate imposition of substantial economic disadvantage upon an alien for reasons of race, religion or political opinion is sufficient to confer upon the Attorney General the discretion to withhold deportation. *Id.* at 107.

The United Nations Protocol relating to the Status of Refugees confirms that

imposition of economic hardship constitutes persecution. The *Handbook on Procedures and Criteria for Determining Refugee Status* (Geneva 1979) (hereinafter Handbook) provides that a victim of discrimination will be considered a refugee, and therefore entitled to asylum: if the measure of discrimination leads to consequences of a substantially prejudicial nature for the person concerned, e.g. serious restrictions on his right to earn a livelihood, his right to practice his religion, or his access to normally available educational facilities. *Handbook*, 54.

In reaching its result in *Cardoza-Fonseca*, the Supreme Court found that a primary purpose of Congress in enacting the Refugee Act of 1980 was to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, TIAS No. 6577, to which the United States acceded in 1968. *Cardoza-Fonseca*, 480 U.S. at 436-37. That Court observed that the Office of the United Nations High Commissioner for Refugees *Handbook* provides significant guidance in construing the Protocol, to which Congress sought to conform. It has been widely considered useful in giving content to the obligations that the Protocol establishes. *Id.* at n.22. The Board also has cited the *Handbook* in the past as entitled to considerable weight. *See Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982); *Matter of Rodriguez-Palma*, 17 I. & N. Dec. 465 (BIA 1980). Under this correct legal standard, Petitioner merits asylum and should be granted a stay of removal.

Generally, to be entitled for asylum proctection, an applicant must demonstrate

that he has suffered past persecution (or has a well-founded fear of persecution) on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 C.F.R. § 208.13(b)(1). Petitioner satisfies these requirements. Taken as a whole, Petitioner has a substantial case on the merits and a high likelihood of success. *See Leiva-Perez v. Holder*, 640 F.3d 970 (9th Cir. 2011) (per curiam). *See also Andrieu v. INS*, 253 F.3d 477 (9th Cir. 2001) (*en banc*).

Moreover, Petitioner cannot safely return to the country Guatemala because of a "well-founded" fear of persecution and torture, and fears what will become of him should he be removed to Guatemala. Again, it is important to point out that Petitioner has suffered past-persecution, serious harm, death threats, kidnapping, irreparable injury and torture which was motivated by his political opinion and particular social group ("PSG") status. Petitioner certainly would be unable to find any work. This, in itself, is extreme hardship. *See e.g., Carrette-Michel v. INS*, 749 F.2d 490 (8th Cir. 1984) (economic hardship may be sufficient where there is complete inability to work). Also, Petitioner points out that the inability to find employment is a form of persecution that can rise to the level of torture and even death by starvation. As such, removing Petitioner by force to Guatemala would be equivalent to sentencing him to death.

In addition, new material and relevant evidence, including current country conditions, has arisen that must be considered in deciding whether the Petitioner faces persecution, torture or death, if forced to return to Guatemala under the high-potential

risk of future persecution and future torture.

Petitioner strongly holds a well-founded fear of persecution, torture and death, and without government protection it is "more likely than not" to occur. Petitioner respectfully points out that the term "well-founded" is not defined by the Immigration and Nationality Act ("INA"). The Board of Immigration Appeals ("BIA") has adopted the standard originally formulated by the Fifth Circuit, where an applicant establishes an objective well-founded fear if the applicant shows that a reasonable person in his circumstances would fear persecution. *See Matter of Mogharrabi*, 19 I. & N. Dec. 439, 445 (BIA 1987). In fact, it has been well established that this *fear* can be shown through credible testimony alone. *See* 8 C.F.R. § 208(13)(a); *See also, Matter of Mogharrabi*, 19 I. & N. Dec. at 441.

Further, because fear is a subjective state of mind, this showing will involve Petitioner's subjective mental state. The Board ("BIA") has cited the Ninth Circuit statement that "[t]he subjective component requires a showing that the alien's fear is genuine". *Id.* at 444. In this regard, it unequivocally establishes that Petitioner's fear of future persecution and future torture is "well-founded" and under the factual circumstances of his past persecution, serious harm and torture.

Generally, the standard for granting a Stay of Removal has been stated in *Andrieu v. INS*, 253 F.3d 477 (9th Cir. 2001) (*en banc*). Accordingly, the Court must find "either (1) a probability of success on the merits and the possibility of irreparable injury, or (2)

that serious legal questions are raised and the balance of hardship tips sharply in the petitioner's favor." 253 F.3d at 479. Petitioner satisfies this standard.

The Ninth Circuit has pointed out that: these standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay of removal pending review is justified. *Id*. Under the authority of § 6.4(c)(1) and pursuant to *De Leon v. INS*, 115 F.3d 643 (9th Cir. 1997), Petitioner's request for an emergency stay of removal should be granted, and the Court should temporarily stay the removal until further Order of this Court pending his petition for review.

Further, this present emergency motion for a stay of removal should be granted so that the courts can resolve the factual and legal issues Petitioner intends to present in this petition for review. In this case, there is no bona fide reason why Petitioner should be removed to a country where he faces imminent persecution, torture and even death based on an enumerated protected ground. Petitioner should be afforded, at the very minimum, a fair and just opportunity for judicial review, as required by law.

This instant Emergency Stay Motion pursuant to § 6.4(c) is deemed filed. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (petition is deemed filed when mailed). The filing of this Emergency Stay Motion temporarily stays removal until further order of the Court. *See De Leon v. INS*, 115 F.3d 643 (9th Cir. 1997); General Order 6.4(c)(1) (General Order of the Ninth Circuit Court of Appeals).

Based on these laws and facts, this Court should grant this present Motion for Emergency Stay pursuant to the Ninth Circuit's General Order § 6.4(c)(1) and under the authority of *De Leon v. INS*, 115 F.3d 643 (9th Cir. 1997).

**Respectfully submitted on this 2ⁿᵈ day of May, 2024.**

**Executed in Pahrump, Nevada.**

Daniel Martinez-Hernandez
Alien No. 216 – 644 – 998
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

# CERTIFICATE OF SERVICE

PETITIONER: **DANIEL MARTINEZ-HERNANDEZ**

ALIEN No.: **216 – 644 – 998**

---

I, Daniel Martinez-Hernandez, hereby certify that on the date indicated below, I served the Assistant Chief Counsel for the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") for the Las Vegas, Nevada Local Office a true and complete copy of the foregoing documents by placing it in a pre-paid stamped envelope through the institutional internal legal system and mailing it as follows:

**Assistant Chief Counsel for DHS/ICE**
501 South Las Vegas Blvd.
Suite 200
Las Vegas, NV 89060

**Respectfully submitted,**

_D m ///_
Daniel Martinez-Hernandez
Alien No. 216 – 644 – 998
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

**DATE: 05 / 02 / 2024**